RAMIREZ, P. J.
*204 A drug dealer identified only as "Max" owed money to a group of other drug dealers for some methamphetamine that had gone missing. He decided to ambush his creditors, tie them up, rob them of any drugs and money they might have, and kill them.
Max delegated the actual commission of these planned crimes to at least nine men. Some of them, including defendant Pablo Sandoval, worked for him; others, including defendant Edgar Ivan Chavez Navarro,[1] worked for a fellow drug dealer named Eduardo Alvarado; and still others, including defendant Jose Luis Perez, worked for (or with) another drug dealer named Flor Iniguez. According to the prosecution's designated gang expert, most, if not all, of the participants-including all three of the defendants named in this case-were members or associates of the Sinaloa drug *318 cartel; the victims were members or associates of a different cell of the same cartel.
The participants carried out the plan, but not flawlessly. One of the victims, although shot in the face and chest, survived, and he was able to provide information that led the police to defendant Perez and to Sabas Iniguez (Flor Iniguez's nephew). Perez gave statements to the police incriminating himself. Iniguez testified at trial pursuant to a plea bargain.
Defendants were convicted of multiple first degree murders, with special circumstances, as well as other crimes. They now appeal.
In the published portion of this opinion, we will hold that trial counsel forfeited any objection to expert testimony to case-specific hearsay, which is inadmissible under People v. Sanchez (2016) 63 Cal.4th 665, 204 Cal.Rptr.3d 102, 374 P.3d 320 ( Sanchez ), by failing to raise it below. Even though this case was tried before Sanchez was decided, previous cases had already indicated that an expert's testimony to hearsay was objectionable. If anything, Sanchez narrowed the scope of a meritorious objection by limiting it to case-specific hearsay.
In the unpublished portion of this opinion, we will hold that there was insufficient evidence to support the gang special circumstance. We also hold that the trial court erred by failing to instruct on the financial-gain special circumstance. Hence, we will reverse these two special circumstances. We will also direct the trial court to consider whether to strike the firearm *205 enhancements under Penal Code section 12022.53, pursuant to newly enacted Senate Bill 620. Otherwise, however, we find no prejudicial error.
I-II**
III
PROCEDURAL BACKGROUND
Defendants were tried together, but Perez had a jury separate from Sandoval and Chavez's jury.
Each defendant was found guilty on two counts of murder ( Pen. Code, § 187, subd. (a) ), one count of premeditated attempted murder ( Pen. Code, §§ 187, subd. (a), (664) ), three counts of kidnapping for ransom ( Pen. Code, § 209, subd. (a) ), three counts of kidnapping for robbery ( Pen. Code, § 209, subd. (b)(1) ), and one count of active gang participation ( Pen. Code, § 186.22, subd. (a) ).
In connection with the murder counts, six special circumstances were found true: financial gain ( Pen. Code, § 190.2, subd. (a)(1) ), multiple murder ( Pen. Code, § 190.2, subd. (a)(3) ), lying in wait ( Pen. Code, § 190.2, subd. (a)(15) ), robbery murder ( Pen. Code, § 190.2, subd. (a)(17)(A) ), kidnapping murder ( Pen. Code, § 190.2, subd. (a)(17)(B) ), and gang-related murder ( Pen. Code, § 190.2, subd. (a)(22) ).
In connection with all counts other than active gang participation, an enhancement for the discharge of a firearm by a principal in a gang-related crime causing great bodily injury or death ( Pen. Code, § 12022.53, subds. (d), (e)(1) ) and a gang enhancement ( Pen. Code, § 186.22, subd. (b) ) were found true.
Each defendant was sentenced to a total of nine consecutive life terms-five without the possibility of parole, three with a minimum parole period of 25 years, and one with the possibility of parole-plus three years.[6]
*319 *206 IV-IX***
X
THE GANG EXPERT'S TESTIMONY TO CASE-SPECIFIC HEARSAY
Chavez contends that much of the gang expert's testimony consisted of case-specific hearsay, which is inadmissible under Sanchez .
The People respond, among other things, that Chavez's trial counsel forfeited this contention by failing to object to the gang expert's testimony below. Ordinarily, "the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted. [Citations.]" ( People v. Stevens (2015) 62 Cal.4th 325, 333, 195 Cal.Rptr.3d 762, 362 P.3d 408 ; see also Evid. Code, § 353, subd. (a).) Chavez argues, however, that his argument is not subject to forfeiture because it is based on Sanchez , and Sanchez was not decided until after his trial.[14]
" ' "[W]e have excused a failure to object where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal.' " ' [Citation.]" ( People v. Edwards (2013) 57 Cal.4th 658, 704-705, 161 Cal.Rptr.3d 191, 306 P.3d 1049.)
"In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial.' [Citation.]" ( People v.Black (2007) 41 Cal.4th 799, 811, 62 Cal.Rptr.3d 569, 161 P.3d 1130.) We therefore need to review the applicable law prior to and leading up to Sanchez , even if only to decide the People's forfeiture claim.
A. Crawford .
" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove *207 the truth of the matter stated." ( Evid. Code, § 1200, subd. (a).) Under state law, hearsay is generally inadmissible unless it is within some statutory exception to the hearsay rule. ( Evid. Code, § 1200, subd. (b).)
In California and elsewhere, including in the federal courts, " '[a]n expert may generally base his opinion on any "matter" known to him, including hearsay not otherwise admissible, which may "reasonably ... be relied upon" for that purpose. [Citations.] On direct examination, the expert may explain the reasons for his opinions, including the matters he considered in forming them. ...' [Citations.]" ( People v. Catlin (2001) 26 Cal.4th 81, 137, 109 Cal.Rptr.2d 31, 26 P.3d 357 ; see also Fed. Rule Evid. 703.) The thinking is that the out-of-court statements are admitted to shed light on the expert's reasoning, and not for their truth. (See, e.g., CALCRIM No. 360.)
Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 held that if a hearsay statement is "testimonial,"
*320 the confrontation clause prohibits its admission against a criminal defendant, unless (1) the declarant is unavailable at trial, and (2) the defendant has had a prior opportunity to cross-examine the declarant. ( Id . at pp. 53-54, 55-56, 68, 124 S.Ct. 1354.) However, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. [Citation.]" ( Id . at p. 59, fn. 9, 124 S.Ct. 1354.)
One of the many questions that arose in the wake of Crawford was whether the confrontation clause limits the admission of an expert's testimony to hearsay that forms a basis for his or her opinions.
B. Williams .
In 2012, the United States Supreme Court took up this question in Williams v. Illinois (2012) 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89, as presented by the following facts.
A state police lab sent vaginal swabs from a rape victim to Cellmark Diagnostics Laboratory (Cellmark); Cellmark sent back a DNA profile. ( Williams v. Illinois , supra, 567 U.S. at p. 59, 132 S.Ct. 2221.) Earlier (as a technician ultimately testified), she had personally developed a DNA profile from the defendant's blood and entered it into a state database. ( Id . at pp. 59, 123, 132 S.Ct. 2221.)
At the defendant's trial, Sandra Lambatos, another technician employed at the state police lab, testified:
*208 " 'Q Was there a computer match generated of the male DNA profile found in semen from the vaginal swabs of [the victim] to a male DNA profile that had been identified as having originated from [the defendant]?
" 'A Yes, there was.
" 'Q Did you compare the semen ... from the vaginal swabs of [the victim] to the male DNA profile ... from the blood of [the defendant]?
" 'A Yes, I did ....
" 'Q [I]s the semen identified in the vaginal swabs of [the victim] consistent with having originated from [the defendant]?
" 'A Yes.' [Citation.]" ( Williams v. Illinois , supra , 567 U.S. at p. 124, 132 S.Ct. 2221 [dis. opn. of Kagan, J.]; see also id . at p. 61, 132 S.Ct. 2221 [lead opn. of Alito, J.]; id . at p. 87, 132 S.Ct. 2221 [conc. opn. of Breyer, J.] )
On cross-examination, Lambatos admitted that she relied on the Cellmark DNA profile, and she had no personal knowledge of how Cellmark had developed that DNA profile. ( Williams v. Illinois , supra , 567 U.S. at p. 61-62, 132 S.Ct. 2221 [lead opn. of Alito, J.].)
The issue before the Supreme Court was whether Lambatos's testimony that the Cellmark DNA profile came from the swabs violated the confrontation clause as construed in Crawford . This issue produced no majority opinion, and not even a true plurality opinion; rather, there was a 4-1-4 split.
Justice Alito authored the lead opinion, joined by three other justices. He accepted that, as a matter of state law, Lambatos's testimony based on the Cellmark report was not admitted to prove the truth of the matter asserted. ( Williams v. Illinois , supra , 567 U.S. at pp. 57, 69-80, 132 S.Ct. 2221 [lead opn. of Alito, J.].) Separately and alternatively, he also concluded that the Cellmark report was not testimonial. ( Id . at pp. 57, 81-86, 132 S.Ct. 2221.)
Justice Kagan authored the dissenting opinion, also joined by three other justices. In her view, as a matter of federal constitutional law, Lambatos's challenged testimony was admitted to prove the truth of the matter asserted. ( *321 Williams v. Illinois , supra , 567 U.S. at pp. 125-132, 132 S.Ct. 2221 [dis. opn. of Kagan, J.].) "[W]hen a witness, expert or otherwise, repeats an out-of-court statement as the basis for a conclusion, ... the statement's utility is then dependent on its truth. If the statement is true, then the conclusion based on it is probably true; if not, not. So to determine the validity of the witness's conclusion, the factfinder must assess the truth of the out-of-court statement on which it *209 relies. ... [A]dmission of the out-of-court statement in this context has no purpose separate from its truth; the factfinder can do nothing with it except assess its truth and so the credibility of the conclusion it serves to buttress." ( Id . at pp. 126-127, 132 S.Ct. 2221.) Justice Kagan then further concluded that the Cellmark report was testimonial. ( Id . at pp. 132-141, 132 S.Ct. 2221.)
Finally, Justice Thomas wrote a separate opinion concurring solely in the judgment. He agreed with the dissent that the challenged testimony was admitted to prove its truth. ( Williams v. Illinois , supra , 567 U.S. at pp. 104-109, 132 S.Ct. 2221 [conc. opn. of Thomas, J.].) "[S]tatements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth." ( Id . at p. 106, 132 S.Ct. 2221.) However, he agreed with the lead opinion that the Cellmark report was not testimonial ( id ., at pp. 109-118, 132 S.Ct. 2221 ), though for different reasons. ( Id . at p. 111, 132 S.Ct. 2221.)
C. Dungo .
Later in 2012, the California Supreme Court addressed similar issues in People v. Dungo (2012) 55 Cal.4th 608, 147 Cal.Rptr.3d 527, 286 P.3d 442. There, the autopsy of the victim had been performed by one Dr. Bolduc. ( Id . at p. 613, 147 Cal.Rptr.3d 527, 286 P.3d 442.) When the defendant was tried for murder, however, one Dr. Lawrence, who had not been present at the autopsy, gave expert opinion testimony based on his review of Dr. Bolduc's autopsy report and autopsy photos. ( Id . at pp. 614-615, 147 Cal.Rptr.3d 527, 286 P.3d 442.) Thus, he testified that, in his opinion, the victim was strangled to death slowly, as shown by pinpoint hemorrhages in her eyes, neck hemorrhages, the purple color of her face, her bitten tongue, and her unbroken hyoid bone. ( Id . at p. 614, 147 Cal.Rptr.3d 527, 286 P.3d 442.) The autopsy report and the autopsy photos were not introduced. ( Id . at pp. 614-615, 147 Cal.Rptr.3d 527, 286 P.3d 442.)
By signing the majority opinion, five justices agreed that there was no Crawford violation because the contents of the autopsy report, as relayed by Dr. Lawrence, were not testimonial. ( People v. Dungo , supra , 55 Cal.4th at pp. 618-621, 147 Cal.Rptr.3d 527, 286 P.3d 442.) The majority opinion did not specifically discuss whether this evidence was offered for its truth.
Four of those five justices, however, also signed a concurring opinion by Justice Werdegar, which did address this issue. It stated: "Dr. Lawrence relayed to the jury certain physical observations recorded by Dr. Bolduc in his report of the autopsy, using those observations to support Dr. Lawrence's own expert opinions as to the cause and manner of death. Dr. Bolduc's observations were introduced for their truth , and since Dr. Bolduc was not shown to be unavailable and had not been subject to prior cross-examination *210 on this matter by defendant, his statements, were they testimonial, would have been inadmissible under Crawford ." ( *322 People v. Dungo , supra , 55 Cal.4th at p. 627, 147 Cal.Rptr.3d 527, 286 P.3d 442 [conc. opn. of Werdegar, J.], italics added.)
The remaining two justices (Corrigan and Liu) dissented, concluding that the contents of the autopsy report were testimonial. ( People v. Dungo , supra , 55 Cal.4th at pp. 641-646, 147 Cal.Rptr.3d 527, 286 P.3d 442 [dis. opn. of Corrigan, J.].) However, they further concluded: "When an expert witness treats as factual the contents of an out-of-court statement, and relates as true the contents of that statement to the jury, a majority of the high court in Williams ... rejects the premise that the out-of-court statement is not admitted for its truth." ( Id . at p. 635, fn. 3, 147 Cal.Rptr.3d 527, 286 P.3d 442.)
D. Sanchez .
This brings us to Sanchez . There, a gang expert's opinion that the defendant was a gang member was based, in part, on records created by other police officers, which recounted their contacts with the defendant. ( People v. Sanchez, supra, 63 Cal.4th at pp. 672-673, 204 Cal.Rptr.3d 102, 374 P.3d 320.) On appeal, the defendant argued that the admission of the expert's testimony about the content of these records violated Crawford . ( Id . at p. 674, 204 Cal.Rptr.3d 102, 374 P.3d 320.)
The Supreme Court stated: "We first address whether facts an expert relates as the basis for his opinion are properly considered to be admitted for their truth. The confrontation clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' [Citation.]" ( People v. Sanchez , supra , 63 Cal.4th at p. 674, 204 Cal.Rptr.3d 102, 374 P.3d 320.)
"The hearsay rule has traditionally not barred an expert's testimony regarding his general knowledge in his field of expertise." ( People v. Sanchez , supra , 63 Cal.4th at p. 676, 204 Cal.Rptr.3d 102, 374 P.3d 320.) "By contrast, an expert has traditionally been precluded from relating case-specific facts about which the expert has no independent knowledge. Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried. Generally, parties try to establish the facts on which their theory of the case depends by calling witnesses with personal knowledge of those case-specific facts. An expert may then testify about more generalized information to help jurors understand the significance of those case-specific facts. An expert is also allowed to give an opinion about what those facts may mean. The expert is generally not permitted, however, to supply case-specific facts about which he has no personal knowledge. [Citation.]" ( Ibid . )
The court then discussed Williams . ( People v. Sanchez , supra , 63 Cal.4th at pp. 681-683, 204 Cal.Rptr.3d 102, 374 P.3d 320.) It noted: "The reasoning of a majority of justices in Williams calls into question the premise that expert testimony giving case-specific information does not relate hearsay." ( Id . at p. 683, 204 Cal.Rptr.3d 102, 374 P.3d 320.) Rather, under the *211 reasoning of both the dissent and Justice Thomas's concurrence, an expert's testimony to case-specific facts based on hearsay is offered for its truth. ( Id . at pp. 682-683, 204 Cal.Rptr.3d 102, 374 P.3d 320.) The court concluded: "We find persuasive the reasoning of a majority of justices in Williams ." ( Id . at p. 684, 204 Cal.Rptr.3d 102, 374 P.3d 320 fn. omitted.) It therefore held that "[i]f an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay." ( Ibid . ) *323 By contrast, the court allowed an expert to testify freely to non-case-specific hearsay when it is the basis for his or her opinion: "Our decision does not call into question the propriety of an expert's testimony concerning background information regarding his knowledge and expertise and premises generally accepted in his field. Indeed, an expert's background knowledge and experience is what distinguishes him from a lay witness, and, as noted, testimony relating such background information has never been subject to exclusion as hearsay, even though offered for its truth." ( People v. Sanchez , supra , 63 Cal.4th at p. 685, 204 Cal.Rptr.3d 102, 374 P.3d 320.)
E. Discussion .
In Williams , in 2012, a total of five justices of the United States Supreme Court expressed the view that, at least for purposes of the confrontation clause, an expert's testimony to the hearsay on which his or her opinion is based is offered for its truth. At a minimum, as the court in Sanchez stated, their reasoning "call[ed] into question the premise that expert testimony giving case-specific information does not relate hearsay." ( People v. Sanchez , supra , 63 Cal.4th at p. 683, 204 Cal.Rptr.3d 102, 374 P.3d 320.) Moreover, Sanchez expressly relied on the reasoning of Williams .
Then in Dungo , also in 2012, six justices of the California Supreme Court likewise agreed that, when an expert relates an out-of-court statement as the basis for his or her opinion, that statement is necessarily admitted for its truth.
In May 2013, People v. Mercado (2013) 216 Cal.App.4th 67, 156 Cal.Rptr.3d 804 stated: " '[A] five justice majority of the high court and at least six of the seven justices on the California Supreme Court appear to agree that, for purposes of the confrontation clause, out-of-court statements admitted as basis evidence during expert testimony are admitted for their truth if treated as factual by the expert ....' [Citation.]" ( Id . at p. 89, fn. 6, 156 Cal.Rptr.3d 804.)
Admittedly, Williams , Dungo , and Mercado did not anticipate the distinction that Sanchez ultimately drew between case-specific and non-case-specific hearsay. If anything, they suggested that any hearsay that is offered as the *212 basis for an expert's opinion testimony is necessarily offered for its truth. Thus, they alerted competent and knowledgeable counsel to the need to object to such evidence on hearsay and Crawford grounds. They also meant that such objections would not have been futile.
Significantly, in arguing that Crawford prohibits an expert from acting as a conduit for hearsay, Chavez himself relies on various pre- Sanchez authorities, including United States v. Gomez (9th Cir. 2013) 725 F.3d 1121, 1129, United States v. Pablo (10th Cir. 2012) 696 F.3d 1280, 1288, and United States v. Lombardozzi (2d Cir. 2007) 491 F.3d 61, 72.
We therefore conclude that the failure of Chavez's trial counsel to object on these grounds below constituted a forfeiture. Chavez does not contend that his trial counsel's failure to object constituted ineffective assistance of counsel. Hence, we are not called upon to discuss this contention.
XI-XX†
XXI
DISPOSITION
As to each of the three defendants, the gang special circumstance and the financial-gain special circumstance are reversed;
*324 in all other respects, the judgments with respect to the conviction are affirmed. We express no opinion on whether these special circumstances may be retried. (See People v. Zermeno (1999) 21 Cal.4th 927, 933, fn. 3, 89 Cal.Rptr.2d 863, 986 P.2d 196 ; People v. Swain (1996) 12 Cal.4th 593, 610, 49 Cal.Rptr.2d 390, 909 P.2d 994.) However, if the People fail to bring any defendant to a new trial in a timely manner (see Pen. Code, § 1382, subd. (a)(2) ), our remittitur shall be deemed to modify the judgment against that defendant by striking the gang special circumstance and the financial-gain special circumstance.
The judgments with respect to sentencing are reversed. When the trial court resentences defendants, it shall exercise its discretion with respect to *213 whether to strike any of the firearm enhancements under Penal Code section 12022.53.
We concur:
MILLER, J.
FIELDS, J.
Certified for Partial Publication.*

Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, IV, V, VI, VII, VIII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, and XX.

In accordance with Spanish-language naming conventions, this defendant takes the surname Chavez from his father and the surname Navarro from his mother. He prefers to be called "Mr. Chavez" or "Mr. Chavez Navarro" rather than "Mr. Navarro." We will therefore refer to him as Chavez.

See footnote *, ante .

The trial court's statement of the sentence on a count-by-count basis (nine consecutive life terms) was different from its statement of the total aggregate sentence (three consecutive life terms).
The abstracts of judgment are consistent with the count-by-count sentence. Defendants' briefs set forth the count-by-count sentence as the actual sentence. Defendants have not argued that that sentence was erroneous. We therefore accept the count-by-count sentence.

See footnote *, ante .

Defendants' trial ran from October 17-November 1, 2013.

See footnote *, ante .