BLEASE, Acting P.J., Dissenting.
I respectfully dissent. The majority concludes that defendant forfeited his confrontation clause claim by failing to object in the trial court even though the trial court would have been duty bound to overrule any such objection under the governing law in effect at that time. The basis of the forfeiture doctrine is Evidence Code section 353, subdivision (a). It is premised on the requirement that a defendant create a record in support of an objection for use on appeal. Where, as here, the trial court is required to overrule an objection, the record for use on appeal is not enhanced. In other words, had defendant objected below, we would have the same record we have today. The majority's holding that defendant forfeited his confrontation clause claim by failing to object in the trial court renders the futility doctrine futile.
The majority bases its conclusion that defendant forfeited his confrontation clause claim by failing to object in the trial court on its finding that the change in the law effected by People v. Sanchez (2016) 63 Cal.4th 665, 204 Cal.Rptr.3d 102, 374 P.3d 320 ( Sanchez ) was reasonably foreseeable at the time of defendant's trial based on the concurring and dissenting opinions in Williams v. Illinois (2012) 567 U.S. 50, 132 S.Ct. 2221, [183 L.Ed.2d 89] ( Williams ) and People v. Dungo (2012) 55 Cal.4th 608, 147 Cal.Rptr.3d 527, 286 P.3d 442 ( Dungo ). To my knowledge, prior to People v. Perez (Apr. 18, 2018, E060438) 22 Cal.App.5th 201, 231 Cal.Rptr.3d 316 [2018 Cal.App. Lexis 321] (Perez ), cited by the majority in support of its conclusion, no published decision of a California appellate court had held that a defendant forfeited a claim by failing to raise it in the trial court because a change in the governing law was reasonably foreseeable. I decline to join the majority in so holding here. The majority's holding is not only inconsistent with the purpose of Evidence Code section 353, which *958 precludes reversal for erroneous admission of evidence unless there is a timely and specific objection in the trial court, it places an unreasonable burden on defendants to anticipate potential changes in the law based on a view expressed in concurring and dissenting opinions that was not the basis of any judgment. I would hold that defendant's failure to object in the trial court was excused and address the merits of his claim. In doing so, I would conclude that *210 the gang expert's testimony concerning defendant's prior gang activity violated defendant's right to confrontation, and that the People failed to show beyond a reasonable doubt that the error did not contribute to the verdict.
Over 20 years ago in People v. Gardeley (1996) 14 Cal.4th 605, 620, 59 Cal.Rptr.2d 356, 927 P.2d 713 ( Gardeley ), our Supreme Court "endorsed evidentiary rules allowing a gang expert to rely upon, and testify to, 'conversations with the defendants and with other Family Crip members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies,' " reasoning that "such expert testimony is not admitted for its truth ...." ( Sanchez, supra, 63 Cal.4th at p. 683, 204 Cal.Rptr.3d 102, 374 P.3d 320.) While Gardeley predated Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, [158 L.Ed.2d 177] ( Crawford ) by eight years, cases decided after Crawford relied on Gardeley and applied similar reasoning in rejecting confrontation clause challenges. (See, e.g., People v. Hill (2011) 191 Cal.App.4th 1104, 1127-1128, 120 Cal.Rptr.3d 251 ( Hill ); People v. Sisneros (2009) 174 Cal.App.4th 142, 153-154, 94 Cal.Rptr.3d 98 ( Sisneros ); People v. Ramirez (2007) 153 Cal.App.4th 1422, 1426-1427, 64 Cal.Rptr.3d 96 ( Ramirez ); People v. Cooper (2007) 148 Cal.App.4th 731, 746-747, 56 Cal.Rptr.3d 6 ( Cooper ); People v. Fulcher (2006) 136 Cal.App.4th 41, 57, 38 Cal.Rptr.3d 702 ( Fulcher ); People v. Thomas (2005) 130 Cal.App.4th 1202, 1209-1210, 30 Cal.Rptr.3d 582 ( Thomas ).)
For example, in Thomas, 130 Cal.App.4th at page 1209, 30 Cal.Rptr.3d 582, our colleagues in Division Two of the Fourth District Court of Appeal, relied on the "long established [rule] in California that experts may testify as to their opinions on relevant matters and, if questioned, may relate the information and sources on which they relied in forming those opinions," including hearsay, in rejecting a claim that the admission of hearsay evidence in the form of a gang expert's conversations with other gang members in which they identified defendant as a gang member ran afoul of Crawford . The court held that " Crawford does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are *959 not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion." ( Thomas, at p. 1210, 30 Cal.Rptr.3d 582.)
After Thomas (and before our Supreme Court's recent decision in Sanchez ), every division of every district court of appeal to address the issue in a published decision concluded that gang expert basis evidence is not offered for its truth but only to evaluate the expert's opinion to defeat a confrontation clause challenges under Crawford . (See, e.g., Hill, supra , 191 Cal.App.4th at p. 1131, 120 Cal.Rptr.3d 251 ; Sisneros, supra , 174 Cal.App.4th at pp. 153-154, 94 Cal.Rptr.3d 98 ; Ramirez, supra, 153 Cal.App.4th at p. 1427, 64 Cal.Rptr.3d 96 ; Cooper, supra , 148 Cal.App.4th at p. 746-747, 56 Cal.Rptr.3d 6 ; Fulcher, supra , 136 Cal.App.4th at pp. 56-57, 38 Cal.Rptr.3d 702.)
These cases were binding on the trial court at the time of defendant's trial in May 2013. ( Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937 ["Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior *211 courts of this state."]; see also Hill, supra, 191 Cal.App.4th at p. 1131, 120 Cal.Rptr.3d 251 [disagreeing with Thomas, but concluding it was bound by Gardeley and similar precedent supporting Thomas ].) Accordingly, any objection to the gang expert's testimony on confrontation clause grounds would have been futile. (See People v. Jeffrey G. (2017) 13 Cal.App.5th 501, 507, 221 Cal.Rptr.3d 88 ["There is little doubt that objecting [to the experts' testimony on hearsay grounds] would have been futile" pre- Sanchez "[b]ecause the experts' testimony was unobjectionable under the law prevailing at the time of the hearing."]; People v. Meraz (2016) 6 Cal.App.5th 1162, 1170, fn. 7, 212 Cal.Rptr.3d 81, review granted Mar. 22, 2017, S239442 ["Any objection [on confrontation clause grounds] would likely have been futile because the trial court was bound to follow pre- Sanchez decisions holding expert 'basis' evidence does not violate the confrontation clause."]; People v. Valadez (2013) 220 Cal.App.4th 16, 32 & fn. 13, 162 Cal.Rptr.3d 722 [observing that after Williams and Dungo "[i]f the currently constituted courts were called upon to resolve this issue, it seems likely the holdings in Thomas , Hill, and other cases extending Gardeley ... will be significantly undermined," but "[t]his does not mean Gardeley's holding that an expert may rely on inadmissible hearsay as a matter of state evidentiary law is no longer a viable rule"].) It is well established that the duty to object is "excused when an 'objection or request for admonition would have been futile or would not have cured the [alleged] harm.' " ( People v. Carrillo (2004) 119 Cal.App.4th 94, 101, 13 Cal.Rptr.3d 878, quoting People v. McDermott (2002) 28 Cal.4th 946, 1001, 123 Cal.Rptr.2d 654, 51 P.3d 874.)
As the majority notes, the general rule that a party objecting to evidence must make a timely and specific objection in the trial court is found in *960 Evidence Code section 353, subdivision (a).[39] "The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal." ( People v. Morris (1991) 53 Cal.3d 152, 187-188, 279 Cal.Rptr. 720, 807 P.2d 949, disapproved on other grounds in People v. Stansbury (1995) 9 Cal.4th 824, 830, fn. 1, 38 Cal.Rptr.2d 394, 889 P.2d 588.) Where, as here, governing law at the time of defendant's trial held that expert basis testimony was not elicited for its truth, but to assess the weight of the expert's opinion, and thus could not give rise to a confrontation clause violation (see, e.g., Gardeley , supra, 14 Cal.4th at p. 620, 59 Cal.Rptr.2d 356, 927 P.2d 713 ; Thomas, supra, 130 Cal.App.4th at pp. 1209-1210, 30 Cal.Rptr.3d 582 ; Hill , supra , 191 Cal.App.4th at p. 1131, 120 Cal.Rptr.3d 251 ), the trial court would have been duty bound to overrule any objection to the gang expert's testimony on confrontation clause grounds. In other words, such an objection would not have served to prevent the error alleged on appeal.
The majority's suggestion that "faced with the objection defendant makes here *212 on appeal ..., the prosecutor could have decided it prudent to forgo some or all testimony about the prior police contact events the expert related to the jury, or attempt to bring in witnesses who could competently testify to relevant parts of the more pertinent events" is at best wishful thinking. (Maj. opn. ante, at p. 189, italics added.) The governing law in effect at that time clearly was on the prosecution's side, and it would have been no small feat to find witnesses with first-hand knowledge of the activity in question because, as detailed below, three of the five incidents testified to by the gang expert occurred 20 or more years prior to defendant's trial, and the remaining two occurred over 10 years prior thereto. The majority also muses that even if the trial court was bound to follow previous precedent, it might have exercised its discretion differently when considering the implication of more recent developments in the decisional law, such as "giving greater scrutiny to the number and nature of defendant's previous contacts related to the jury by the prosecution's gang expert." (Maj. opn. ante, at p. 192, fn.omitted.) Again, this is pure speculation. Defendant did not object to the challenged testimony as unduly prejudicial under Evidence Code section 352, and as detailed above, the governing law then in effect held that the challenged testimony did not run afoul of the confrontation clause. Nor would an objection at trial resulted in "the creation of a better record," as the *961 majority asserts. (Maj. opn. ante, at p. 192.) Had defendant raised a confrontation clause objection, the trial court would have been duty bound to overrule it. No additional showing would have been necessary, and we would have the same record we have today.
The majority concludes that defendant was required to raise his confrontation clause claim in the trial court because at the time of defendant's trial "the legal writing was on the wall and key changes in the law discussed in Sanchez were not unforeseeable" to competent and knowledgeable counsel based on the concurring and dissenting opinions in Williams and Dungo . (Maj. opn. ante, at p. 185, italics omitted.) The common view expressed in the concurring and dissenting opinions in those cases could not be taken as a holding by either court since it was not the basis of any judgment. (See Dungo , supra, 55 Cal.4th at pp. 627-629, 147 Cal.Rptr.3d 527, 286 P.3d 442 (conc. opn. of Chin, J.) The majority does not contend otherwise. Rather, the majority relies on our Supreme Court's decision in People v. Rangel (2016) 62 Cal.4th 1192, 200 Cal.Rptr.3d 265, 367 P.3d 649, ( Rangel ), for the "foreseeability rule" it endorses here, although Rangel never mentions such a rule. (Maj. opn. ante, at pp. 184-85.)
In Rangel , the defendant argued that the trial court's admission of certain statements as adoptive admissions violated his right to confrontation under Crawford , which was not decided until after the defendant's trial. ( Rangel, supra , 62 Cal.4th at p. 1213, 200 Cal.Rptr.3d 265, 367 P.3d 649.) The People asserted that the defendant forfeited his challenge by failing to object on this ground at trial. ( Id. at p. 1215, 200 Cal.Rptr.3d 265, 367 P.3d 649.) The court held that the defendant's "failure to object on confrontation clause grounds during his 1998 trial ' "was excusable, since governing law at the time ... afforded scant grounds for objection," ' " noting that at the time of the defendant's trial "governing law in California held that admission of a hearsay statement as an adoptive admission did not implicate the defendant's Sixth Amendment confrontation right." ( Ibid . ) The court further observed: " ' " '[W]e have excused a failure to object where to require defense counsel to raise an objection "would place an unreasonable *213 burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal." ' " [Citation.]' " ( Id. at p. 1215, 200 Cal.Rptr.3d 265, 367 P.3d 649.) Because Crawford was " 'flatly inconsistent with the prior governing precedent,' " the court concluded that "in a case tried before Crawford, a defendant does not forfeit a Crawford challenge by failing to raise a confrontation clause objection at trial." ( Rangel, at p. 1215, 200 Cal.Rptr.3d 265, 367 P.3d 649.) The court then went on to "clarify that the relevant inquiry is not, as some of our cases might be read to suggest, whether the defendant's Crawford challenge relies on the same facts and legal standards as a challenge made on hearsay or other state law grounds. ... For present purposes ..., the relevant question is whether requiring defense counsel to raise an objection ' " ' "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law." ' " ' " ( Id. at pp. 1216-1217, 200 Cal.Rptr.3d 265, 367 P.3d 649.) *962 Because requiring defense counsel to raise its confrontation clause objection would have placed such a burden on the defendant in that case, the court concluded that the defendant had not forfeited his Crawford claim. ( Rangel, at p. 1217, 200 Cal.Rptr.3d 265, 367 P.3d 649.)
Here, as in Rangel, defendant's failure to object on confrontation clause grounds during his trial was excusable because governing law at the time held that expert basis testimony was not elicited for its truth, but to assess the weight of the expert's opinion, and thus could not give rise to a confrontation clause violation. (See, e.g., Gardeley , supra, 14 Cal.4th at p. 620, 59 Cal.Rptr.2d 356, 927 P.2d 713 ; Thomas, supra, 130 Cal.App.4th at pp. 1209-1210, 30 Cal.Rptr.3d 582 ; Hill , supra , 191 Cal.App.4th at p. 1131, 120 Cal.Rptr.3d 251.) Sanchez was "flatly inconsistent" with prior governing precedent insofar as it held that "there is no denying that such facts are being considered by the expert, and offered to the jury, as true." ( Sanchez, supra , 63 Cal. 4th at p. 684, 204 Cal.Rptr.3d 102, 374 P.3d 320.) While Williams and Dungo suggested that if called upon to decide the issue, a majority of justices on the United States Supreme Court and our Supreme Court, as then constituted , would likely find that the extrajudicial basis of an expert's opinion is necessarily considered for its truth for confrontation purposes, there was no indication that either court would reach the issue in the foreseeable future at the time of defendant's trial. The petition for review in Sanchez was not granted until May 2014, one year after the trial in this case, and the United States Supreme Court has yet to hold that expert basis testimony is necessarily offered for its truth.[40]
*214 In crafting its "foreseeability rule," the majority takes court's statement, " ' " '[W]e have excused a failure to object where to require defense counsel *963 to raise an objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal" ' " ' " ( Rangel, supra , 62 Cal.4th at p. 1215, 200 Cal.Rptr.3d 265, 367 P.3d 649 ), and turned it on its head to find that where changes in the law are foreseeable, a defendant must raise a timely and specific objection in the trial court in order to preserve the issue for appeal even where, as here, the governing law in effect at the time of the objection would have required the trial court to overrule it. That is not the law as demonstrated by the Supreme Court's recent decision in People v. Gallardo (2017) 4 Cal.5th 120, 226 Cal.Rptr.3d 379, 407 P.3d 55 ( Gallardo ).
In Gallardo , the trial court increased the defendant's sentence for second degree robbery and transportation of marijuana based on its finding that her prior conviction for assault with a deadly weapon or with force likely to produce great bodily injury involved an assault with a deadly weapon and thus qualified as a serious felony under Penal Code section 667, subdivision (a). ( Gallardo, supra , 4 Cal.5th at p. 125, 407 P.3d 55.) The trial court based its determination on the transcript of the preliminary hearing in the defendant's assault case. ( Id. at p. 125-126, 226 Cal.Rptr.3d 379, 407 P.3d 55.) The defendant argued that her increased sentence "rest[ed] on an exercise in judicial factfinding that violated her Sixth Amendment right to a jury trial" as set forth in Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, [147 L.Ed.2d 435, 455]. ( Gallardo, at pp. 123-124, 226 Cal.Rptr.3d 379, 407 P.3d 55.) The People asserted that the defendant forfeited her Sixth Amendment challenge by failing to raise it in the trial court. ( Id. at pp. 127-128, 226 Cal.Rptr.3d 379, 407 P.3d 55.) While our Supreme Court declined to resolve the issue because the People did not make their forfeiture argument in the Court of Appeal ( id. at p. 128, 226 Cal.Rptr.3d 379, 407 P.3d 55 ), its analysis and observations are instructive.
At the time of the defendant's sentencing in Gallardo , the law was in flux. In People v. McGee (2006) 38 Cal.4th 682, 42 Cal.Rptr.3d 899, 133 P.3d 1054 ( McGee ), our Supreme Court "held that the Sixth Amendment permits courts to review the record of a defendant's prior conviction to determine whether the crime qualifies as a serious felony for purposes of the sentencing law." ( Gallardo, supra, 4 Cal.5th at p. 124.) Thereafter, in Descamps v. United States (2013) 570 U.S. 254, 133 S.Ct. 2276, [186 L.Ed.2d 438] ( Descamps ), the United States Supreme Court "ma[d]e clear that when the criminal law imposes added punishment based on findings about the facts underlying a defendant's prior conviction, '[t]he Sixth Amendment contemplates that *215 a jury-not a sentencing court-will find such facts, unanimously and beyond a reasonable doubt.' " ( Gallardo at p. 124, 226 Cal.Rptr.3d 379, 407 P.3d 55, quoting Descamps, supra, 570 U.S. at p. 269, 133 S.Ct. 2276.)
In addressing the People's forfeiture argument, the court in Gallardo explained: "At the time defendant was sentenced, California law allowed a *964 trial court to look to a preliminary hearing transcript to determine whether a defendant's prior conviction was 'realistically' a serious felony. To be sure, Descamps, which forms the centerpiece of defendant's argument to this court, had been decided by the time of defendant's sentencing. But Descamps did not squarely overrule existing California law; it discussed the relevant Sixth Amendment principles only en route to construing the federal statute at issue to avoid constitutional concerns. [Citation.] It is at least questionable whether defendant should be made to bear the burden of anticipating potential changes in the law based on the reasoning of a United States Supreme Court opinion addressed to the proper interpretation of a federal statute not at issue here." ( Id. at pp. 127-128, 226 Cal.Rptr.3d 379, 407 P.3d 55.)
Unlike Gallardo, here there was not a majority opinion calling into question the governing law. Rather, there were concurring and dissenting opinions in Williams and Dungo, and the common view expressed in those opinions could not be taken as a holding by either court since it was not the basis of any judgment. (See Dungo, supra , 55 Cal.4th at pp. 627-629, 147 Cal.Rptr.3d 527, 286 P.3d 442 (conc. opn. of Chin, J.).) If it is "at least questionable" whether a defendant should be made to bear the burden of anticipating a potential change in the law based on the reasoning of a majority opinion issued by the Unites States Supreme Court, there is no question that a defendant should not be made to bear the burden of anticipating potential changes in the law based on a view expressed in concurring and dissenting opinions that could not be taken as a holding. ( Gallardo, supra , 4 Cal.5th at p. 128, 226 Cal.Rptr.3d 379, 407 P.3d 55.)
Until very recently, no published decision of a California court of appeal had held that a defendant forfeited a claim by failing to raise it in the trial court based on the ground that a change in the law was reasonably foreseeable. To the contrary, in People v. Meraz , supra, 6 Cal.App.5th at page 1170, footnote 7, 212 Cal.Rptr.3d 81, a case identical to this one in all relevant respects, our colleagues in Division Eight of the Second Appellate District refused to find that the defendants forfeited their claim that the trial court violated their rights to confrontation by allowing a gang expert to offer opinions based on out-of-court testimonial hearsay by failing to object in the trial court, finding that "[a]ny objection would likely have been futile because the trial court was bound to follow pre- Sanchez decisions holding expert 'basis' evidence does not violate the confrontation clause." Likewise, in People v. Jeffrey G., supra , 13 Cal.App.5th at pages 507-508, 221 Cal.Rptr.3d 88, our colleagues in Division One of the First Appellate District refused to find that a defendant forfeited his claim that the prosecution's experts' testimony at a hearing on his petition for transfer from a state hospital to a conditional release program ran afoul of Sanchez by failing to object to the experts' testimony on that ground at the hearing. Sanchez was decided less than two weeks after the defendant's hearing in that case. ( Jeffrey G. , at p. 506, 221 Cal.Rptr.3d 88.) The court found, "There is little doubt that objecting would have been futile. Because the *965 experts' testimony was unobjectionable under the law prevailing at the time of the *216 hearing, any objection would presumably have been overruled." ( Id. at p. 507, 221 Cal.Rptr.3d 88, fn. omitted.) As for the Attorney General's argument that defendant's trial counsel should have "anticipated that Sanchez would one day issue and change the law," the court stated: "We decline to require such prescience." ( Id. at p. 508, fn. omitted.)
More recently, however, our colleagues in Division Two of the Fourth District, reached the opposite conclusion. (Perez, supra, 22 Cal.App.5th at p. ----, 231 Cal.Rptr.3d 316 [pp. 2-3].) In Perez , the court held that a defendant forfeited his contention that much of the gang expert's testimony in that case consisted of case-specific hearsay by failing to object to such testimony in the trial court, finding that "[e]ven though the case was tried before Sanchez was decided, previous cases had already indicated that an expert's testimony to hearsay was objectionable." (Id. at p. ---- [p. 3].) The court noted that a majority of the justices in both Williams and Dungo "expressed the view that, at least for purposes of the confrontation clause, an expert's testimony to the hearsay on which his or her opinion is based is offered for its truth," and found that those cases "alerted competent and knowledgeable counsel to the need to object to such evidence on hearsay and Crawford grounds. They also meant that such objections would not have been futile." (Id. at p. ---- [p. 59].) I do not find the court's reasoning in Perez persuasive.
As previously discussed, the common view expressed in the concurring and dissenting opinions in Williams and Dungo could not be taken as a holding by either court since it was not the basis of any judgment. (See Dungo, supra, 55 Cal.4th at pp. 627-629, 147 Cal.Rptr.3d 527, 286 P.3d 442 (conc. opn. of Chin, J.); see also People v. Sandoval (2007) 41 Cal.4th 825, 837, 62 Cal.Rptr.3d 588, 161 P.3d 1146 [refusing to apply forfeiture rule to defendant's claim that imposition of upper term violated her right to jury trial where defendant failed to object in trial court even though counsel in other cases had anticipated the change in the law effected by Cunningham v. California (2006) 549 U.S. 270, 127 S.Ct. 856, [166 L.Ed.2d 856] and raised the issue in the trial court because binding precedent would have required trial court to overrule the objection].) Moreover, Perez inexplicably fails to mention, much less discuss Gardeley or the numerous post- Crawford court of appeal decisions that held that gang expert basis evidence is not offered for its truth to defeat confrontation clause challenges under Crawford , including its own decision in Thomas. As explained above, those cases were binding on the trial courts prior to our Supreme Court's decision in Sanchez.
I do not dispute that the better practice in this case may have been to raise a confrontation clause objection in the trial court, particularly with the benefit of hindsight. I disagree, however, with the majority that defendant forfeited *966 his confrontation clause claim by failing to do so here where the trial court would have been duty bound to overrule it, and there was no indication that either the United States Supreme Court or California Supreme Court would address the issue in the foreseeable future. Accordingly, I would excuse defendant's failure to object and address the merits of his claim.
Turning to the merits, the People properly concede that much, if not all, of the gang expert's testimony concerning defendant's prior gang activity consists of case-specific testimonial hearsay, and its admission ran afoul of the confrontation clause under Sanchez .[41] It is clear from the record *217 that most, if not all, of the expert's testimony concerning defendant's prior gang activity constituted hearsay in that it consisted of out-of-court statements that were offered for the truth of the matter asserted. ( Evid. Code, § 1200, subd. (a) ; Sanchez, supra, 63 Cal.4th at p. 684, 204 Cal.Rptr.3d 102, 374 P.3d 320.) The gang activity testified to by the expert occurred in 1991, 1992, 1993, 1995, and 2002; the expert did not start with the police department until 2000 and was not assigned to the problem-oriented policing team (POP), where he first testified he dealt with gang-related problems, for three years. Thus, his testimony could not have been based on his personal knowledge. The record also makes plain that the expert's testimony was gleaned from police reports or similar materials. When asked if he "had an opportunity to review [defendant's] background and a number of the contacts that he's had," the gang expert indicated that he had. (Italics added.) After he testified regarding an incident in October 1992 during which "a female victim ... was bumped into by a male black subject on a bicycle" who then took her purse, the prosecutor advised the court and the jury that "[t]here was an error to the report involving a bicycle incident that we have been referring to" and asked the court and the jury to disregard that incident. (Italics added.) Later, when testifying about a domestic violence incident in 1995, the expert stated that "in the domestic violence report , [defendant] was described as wearing burgundy pants and also that he was a Meadowview Bloods at the time." (Italics added.) Because the testimony was based on police reports or similar material, it was testimonial. ( Sanchez, supra, 63 Cal.4th at p. 694, 204 Cal.Rptr.3d 102, 374 P.3d 320.) Finally, all the incidents to which the expert testified related to defendant, and thus consisted of case-specific facts. ( Id. at p. 676, 204 Cal.Rptr.3d 102, 374 P.3d 320.) Accordingly, the admission of such evidence violated defendant's rights under the confrontation clause.
Having concluded that the gang expert's testimony concerning defendant's prior gang activity violated defendant's rights under the confrontation clause, I next consider whether defendant was prejudiced by the violation.
*967 "Confrontation clause violations are subject to federal harmless-error analysis under Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, [17 L.Ed.2d 705]." ( People v. Geier (2007) 41 Cal.4th 555, 608, 61 Cal.Rptr.3d 580, 161 P.3d 104.) This is a much more difficult standard for the People to overcome than the "reasonable probability" standard employed in assessing whether defendant was prejudiced by trial counsel's deficient performance. ( People v. Mesa (2006) 144 Cal.App.4th 1000, 1008, 50 Cal.Rptr.3d 875.) Under Chapman , the People must prove the errors were harmless beyond a reasonable doubt; that is, the errors did not contribute to the jury's verdict. ( People v. Houston (2012) 54 Cal.4th 1186, 1233, 144 Cal.Rptr.3d 716, 281 P.3d 799 ; Sanchez, supra , 63 Cal. 4th at p. 699, 204 Cal.Rptr.3d 102, 374 P.3d 320.) " 'To say that an error did not contribute to the ensuing verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation.] Thus, the focus is what the jury actually decided and whether the error might have tainted its decision." ( People v. Neal (2003) 31 Cal.4th 63, 86, 1 Cal.Rptr.3d 650, 72 P.3d 280.) The judgment must be reversed unless it is clear beyond a reasonable doubt *218 that a rational jury would have reached the same verdict absent the error. ( People v. Capistrano (2014) 59 Cal.4th 830, 873, 176 Cal.Rptr.3d 27, 331 P.3d 201.)
Defendant contends that the confrontation clause violation requires reversal of the entire judgment because the People "cannot establish beyond a reasonable doubt that the improperly admitted evidence did not affect the jury's evaluation of the defense argument that Sisoukchaleun and his companions were the aggressors and [defendant] only obtained the gun and then shot Sisoukchaleun in self-defense." I agree with respect to the murder conviction.
At trial, defendant did not dispute that he shot and killed Sisoukchaleun. Rather, the defense's theory was that defendant acted in self-defense, or at worst, imperfect self-defense. The defense argued that it was Sisoukchaleun, not defendant, who was the aggressor. According to the defense, Sisoukchaleun could not let a rival gang member's statements go, especially when the statements were made in the presence of his friends, at least one of whom was a fellow gang member. The defense claimed that defendant retrieved the gun after being confronted by Sisoukchaleun, and had he not done so, Sisoukchaleun and his friends would be on trial for defendant's murder. The defense urged that defendant shot Sisoukchaleun after Sisoukchaleun took a swing a him because he believed it was his only option.
The prosecutor's gang expert testified about gang-related activities in which defendant participated as part of the basis for his opinion that defendant was a Meadowview Bloods gang member. Those activities included pulling a loaded rifle on a police officer, committing an armed *968 robbery, and attempting to commit a carjacking while armed. The jury was instructed that it could consider evidence of gang activity "for the limited purpose of deciding whether the defendant acted with the intent, purpose and knowledge that are required to prove the gang-related enhancement charged or that the defendant had a motive to commit the crime charged. [¶] ... [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."
Evidence defendant engaged in gang activity in the past, particularly activity that involved the use of firearms, supported the prosecution's theory that the shooting was gang-motivated, which necessarily undercut the defense's theory that defendant was acting in self-defense. As the majority recognizes, such evidence "supported the prosecution's position that defendant was an active member of the Meadowview Bloods, that, when he shot Sisoukchaleun, he did so for the benefit of that particular criminal street gang, and that he had the specific intent to assist, further, or promote criminal conduct by gang members within the meaning of [Penal Code] section 186.22." (Maj. opn. ante, at p. 201.)
While there was substantial evidence in addition to defendant's prior gang activity that supported the prosecution's theory that the shooting was gang-motivated, such as defendant repeatedly calling out Meadowview Bloods, the record did not foreclose a finding that Sisoukchaleun was the aggressor, and that defendant was acting in self-defense when he shot him.
The evidence adduced at trial included the following: Sisoukchaleun and Manivong flashed gang signs as they approached the liquor store, and Sisoukchaleun and Thammavongsa used the word "cuz," which is associated with the Crips street gang. When defendant, who was standing just outside the liquor store, indicated that he was a member of the Meadowview Bloods, *219 Sisoukchaleun responded by invoking the name of the LGC or Lao Gangster Crips, a rival gang with which both he and Thammavongsa were "affiliated." After defendant retrieved the gun, he kept saying "Blood, Meadowview, this and that." Sisoukchaleun "got tired of hearing it," took his shirt off, walked out to the street, and said, "Let's fight." Thammavongsa told Sisoukchaleun to "stop it" and "we just going to leave." Sisoukchaleun and defendant walked into the street, and Thammavongsa followed. According to Thammavongsa, the other guys in their group were "[r]ight there with us," and Thammavongsa confirmed that he would have gotten involved if defendant had gotten the better of Sisoukchaleun in the fight. Sisoukchaleun was saying, "Let's fight," but defendant "didn't really say nothing" and did not square up to fight. Sisoukchaleun took a swing at defendant, and defendant dodged out of the way, pulled out a gun, shot Sisoukchaleun in the face and chest, and fled. *969 The majority claims that the video evidence of the scene shows that "[i]nstead of getting in his truck and leaving the scene, defendant chose to re-engage Sisoukchaleun's group." (Maj. opn. ante, at p. 203.) While that is one interpretation of what is depicted in the video, it is not the only one. The video shows defendant approach the front door of the liquor store, talk to someone inside, and then continue to mill around outside the store before Sisoukchaleun and his friends arrive. When Sisoukchaleun and his friends do arrive, they likewise approach the front door of the store and appear to talk to someone inside. As the majority observes, Sisoukchaleun and his friends remain milling around in recessed entry of the store when defendant leaves to retrieve his gun. After retrieving his gun, defendant returns to the front of the store near where Sisoukchaleun and his friends are standing. While defendant can be seen saying something in an animated fashion, Sisoukchaleun and his friends also appear to be speaking. The video has no sound, so it is unclear what is being said. Before driving off after the shooting, defendant's girlfriend approaches the front door of the store and retrieves a parcel from someone inside. While defendant may have chosen to re-engage Sisoukchaleun and his friends after retrieving his gun, it is also possible that he simply returned to pick up his alcohol and Sisoukchaleun and his friends re-engaged defendant. It is not clear. For that reason, I disagree with the majority's conclusion that the video evidence negates any claim of self-defense or imperfect self-defense. (Maj. opn. ante, at p. 202.)
The People assert that the jury's verdict finding defendant guilty of first degree murder shows that "the jury clearly rejected defense counsel's argument that appellant shot the victim in self-defense." As defendant points out, "The [People's] analysis clearly begs the question: has the state shown beyond a reasonable doubt, that the jury would have rejected the substantial evidence that the shooting was in self-defense in the absence of the highly prejudicial, improperly admitted case-specific testimonial hearsay about appellant's past gang activity?" Based on the record and the prejudicial nature of the evidence in question, I would find that the People have failed to establish beyond a reasonable doubt that the error did not contribute to the first degree murder verdict.
For the reasons set forth above, I would reverse the judgment for first degree murder and the findings on the gang and firearm enhancements.

Section 353 provides in pertinent part: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."

The majority cites People v. Mercado (2013) 216 Cal.App.4th 67, 156 Cal.Rptr.3d 804 (Mercado ) for the proposition that the change in the law effected by Sanchez was reasonably foreseeable. In that case, the court disagreed with the People's assertion that " 'Williams has no application to the facts here and nothing in Williams overrules the longstanding rule in California that experts may rely upon and testify to sources on which they base their opinions,' " noting that "[a]lthough the Williams plurality concluded expert basis testimony does not constitute hearsay because it is not admitted for its truth, both Justice Thomas and the Williams dissenters rejected that analysis, concluding the evidence at issue had been admitted for its truth." (Mercado, at p. 89, 156 Cal.Rptr.3d 804.) The court ultimately concluded that no confrontation clause violation had occurred because the extrajudicial statements relied on by the expert in reaching his conclusion were not testimonial. (Ibid. ) To the extent that Mercado can be read as holding that Williams or Dungo overruled Gardeley, Thomas, and the numerous other appellate court decisions holding that expert basis evidence is not offered for its truth, it is incorrect. As detailed above, the common view expressed in the concurring and dissenting opinions in Williams and Dungo did not constitute a holding by either court since it was not the basis of any judgment. (See Dungo, supra , 55 Cal.4th at pp. 627-629, 147 Cal.Rptr.3d 527, 286 P.3d 442 (conc. opn. of Chin, J.).) Thus, the majority's reliance on Williams, Dungo, and Mercado for the proposition "that the confrontation clause analysis had changed since Gardeley, Thomas, and Hill " is misplaced. (Maj. opn. ante, at p. 189.) As detailed above, law did not change until Sanchez . If it had, there would have been no reason for the court to expressly disapprove Gardeley in Sanchez. (Sanchez, supra, 63 Cal.4th at p. 686, fn. 13, 204 Cal.Rptr.3d 102, 374 P.3d 320.)

The People concede that "[u]nder Sanchez, the ... testimony, in which the gang expert related case-specific, out-of-court statements documenting appellant's prior gang and police contacts, amounted to testimonial hearsay," but argue that the error was harmless beyond a reasonable doubt. The majority accepts the concession.