Filed 12/15/23

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F084489 |
| Plaintiff and Respondent, | (Super. Ct. No. BF159352B) |
| v. | |
| BRYSON CLAYTON MITCHELL, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.B. of the Discussion.

**SEE CONCURRING OPINION**

## INTRODUCTION

In 2015, appellant Bryson Clayton Mitchell went on a crime spree with two accomplices. In 2017, appellant was convicted of 21 felonies stemming from this crime spree, including various robberies and assaults with a semiautomatic firearm. Numerous gang enhancements were found true, and the jury convicted appellant of being an active gang member. He received an aggregate determinate sentence of 67 years, along with a consecutive aggregate indeterminate term of 144 years.

In 2021, this court issued a nonpublished opinion in which we vacated appellant's sentence and remanded this matter for a full resentencing after we determined a firearm enhancement had been improperly imposed in a particular count. We otherwise affirmed appellant's judgment.[1] (*People v. Mitchell* (Feb. 18, 2021, F075878) [nonpub. opn.].)

On May 26, 2021, the California Supreme Court denied review of this matter. The following day, this court issued the remittitur.

On January 1, 2022, Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) became effective. This legislation made significant changes to the elements necessary to establish a criminal street gang.

On May 27, 2022, the trial court resentenced appellant in this matter. Prior to resentencing, the court expressed concern that newly enacted Assembly Bill 333 applied retroactively to appellant. However, the court concluded that it lacked jurisdiction to address the validity of appellant's gang conviction and the gang enhancements. The court resentenced appellant to an aggregate determinate term of 63 years eight months, along with a consecutive aggregate indeterminate sentence of 144 years.

---

[1] As noted in our prior opinion, appellant had been sentenced in this matter three times before we directed the lower court to conduct another sentencing hearing. The original sentencing occurred in June 2017. On October 19, 2018, appellant was resentenced to correct certain errors that the California Department of Corrections and Rehabilitation had brought to the trial court's attention. Finally, on October 31, 2018, the court recalled the sentence to correct a mathematical error.

In the present appeal, the parties dispute whether appellant is entitled to the retroactive benefits of Assembly Bill 333. We conclude that appellant has the better argument. It is undisputed that Assembly Bill 333 applies retroactively to any criminal matter that is not yet final on appeal. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207 (*Tran*).) In the published portion of this opinion, we hold that, because this matter is still pending before us, it cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect. Accordingly, appellant's judgment is not yet final, and we must presume the Legislature intended for this ameliorative enactment to apply as broadly as is constitutionally permissible. (See *People v. Esquivel* (2021) 11 Cal.5th 671, 677 (*Esquivel*).) Appellant benefits from Assembly Bill 333.

In the nonpublished portion of this opinion, we conclude that this record no longer contains admissible evidence to establish the predicate offenses necessary to prove a pattern of criminal gang activity. (See *People v. Valencia* (2021) 11 Cal.5th 818, 839 (*Valencia*) [the particular events and participants alleged to have been involved in predicate offenses must be proved by independently admissible evidence].) Consequently, we will vacate the gang conviction and the gang enhancements. We will remand this matter for further proceedings, including a full resentencing, but the People shall have an opportunity to retry the gang charge and the gang enhancement allegations under the new law. (See *People v. Oliva* (2023) 89 Cal.App.5th 76, 89; *People v. Sek* (2022) 74 Cal.App.5th 657, 669–670.) We otherwise affirm appellant's judgment.[2]

## BACKGROUND

We summarize the material trial evidence. A more detailed summary of the trial facts may be found in our prior nonpublished opinion. (*People v. Mitchell, supra*,

---

[2] Because we remand for further proceedings, we do not address appellant's claim that sentencing error occurred. Following remand, a full resentencing is required because we have vacated part of the sentence. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

F075878).)  When appellant and his two accomplices[3] went on their crime spree, they were each members of the East Side Crips.  Under the law in effect at the time of appellant's offenses in 2015 and this trial in 2017, the prosecution established that the East Side Crips are a criminal street gang in Kern County.

## I.     The Crimes Charged in Counts 1–3 (the Robbery of the Restaurant)

On February 25, 2015, at about 3:06 a.m., appellant and his two accomplices entered a restaurant located in Kern County.  A single employee was present.  Appellant was armed with a semiautomatic firearm.  Appellant and his accomplices took property belonging to both the employee and the restaurant.

## II.     The Crimes Charged in Counts 4–8 (the Robbery of the Convenience Store)

About 45 minutes after the incident above, appellant and his accomplices entered a convenience store in Kern County.  Two employees were present.  Appellant was armed with a semiautomatic firearm.  Appellant and his accomplices left with property belonging to the convenience store.

## III.     The Crimes Charged in Counts 9–16 (the Home Invasion)

About 15 minutes after the incident above, appellant and his accomplices entered a residence in Kern County.  Two parents and their baby were present, along with another adult relative.[4]  Appellant was armed with a semiautomatic weapon.  Appellant and his accomplices took property belonging to the family.[5]

---

[3]     Appellant's accomplices are not parties in the present appeal.

[4]     The parents had two other minor children who were outside sitting in an idling vehicle when the home invasion occurred.  The parents had been loading up their vehicle for a trip out of town when appellant and his accomplices entered the residence.

[5]     At one point, one of appellant's accomplices threatened the mother that they would kidnap her baby if she did not give them property.

## IV. The Crimes Charged in Counts 17–18 (the Shooting)

About four hours after the incident above, appellant was outside near a market in Kern County. The market was a known hangout for gang members from the Country Boy Crips, a rival to appellant's gang. Appellant was alone, and he fired multiple shots at Terrance Wiley. Wiley is known as "T.T.," and he is a gang member in the Country Boy Crips. Nobody was injured in this shooting, but at least one of appellant's shots struck a parked vehicle that was occupied.

## V. The Forensic Evidence

Shortly after this crime spree ended, an officer on patrol happened to spot two African-American males on a public street. They matched the general description of some of the suspects from the crime spree. The officer initiated contact, and the suspects fled. One of the suspects tossed a semiautomatic firearm aside. Appellant's DNA was later discovered on this firearm. Law enforcement recovered two spent shell casings from the scene of the shooting at the market. The two spent shell casings were identical to the ammunition that was loaded in the recovered semiautomatic firearm.

## VI. Appellant Commits an Alleged Assault While in Jail and He Later Tries to Escape While in Custody

Law enforcement located and arrested appellant less than 24 hours after this crime spree ended. While in jail in May 2015, appellant and two other fellow East Side Crip gang members (who were not the accomplices in the crime spree) assaulted a rival Country Boy Crip gang member. Appellant punched the victim, while the other East Side Crip gang members kicked the victim. The jury saw video of this assault. At trial, the prosecution's gang expert opined that appellant's participation in this assault showed his ongoing association with the East Side Crips despite being arrested.

## VII. The Convictions and Sentences

When he was resentenced in this matter in 2022, appellant received an aggregate determinate sentence of 63 years eight months, along with a consecutive aggregate

indeterminate term of 144 years.  As noted in our prior opinion, the trial court found true that appellant had a prior conviction for voluntary manslaughter.  (*People v. Mitchell, supra,* F075878).)

We summarize appellant's convictions and the sentences imposed in each count.

### 1. Count 1

In count 1, appellant was convicted of second degree robbery (Pen. Code, § 212.5, subd. (c)).[6]  He received an upper prison term of 10 years (§ 213, subd. (a)(2)).  An additional 10 years was imposed for a firearm enhancement (§ 12022.53, subd. (b)).  An additional 10 years was imposed for a gang enhancement (§ 186.22, subd. (b)(1)).  This sentence and enhancements were stayed pursuant to section 654.

### 2. Count 2

In count 2, appellant was convicted of assault with a semiautomatic firearm and an upper term of 18 years was imposed.  (§ 245, subd. (b).)  This sentence was enhanced by five years for a prior serious felony (§ 667, subd. (a)) and further enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)).  A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 3. Count 3

In count 3, appellant was convicted of second degree burglary and the court imposed an upper term of six years.  (§ 460, subd. (b).)  This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)) and further enhanced by four years for a gang enhancement (§ 186.22, subd. (b)(1)).  This sentence and enhancements were stayed.

### 4. Count 4

In count 4, appellant was convicted of second degree robbery (§ 212.5, subd. (c)).  He received an upper term of 10 years.  (§ 213, subd. (a)(2).)  This sentence was

---

[6]     Further statutory references are to the Penal Code unless otherwise indicated.

enhanced by 10 years for a firearm enhancement (§ 12022.53, subd. (b)) and further enhanced 10 years for a gang enhancement (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 5. Count 5

In count 5, appellant was convicted of second degree robbery and he received an upper term of 10 years. (§ 212.5, subd. (c).) This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.53, subd. (b)) and further enhanced 10 years for a gang enhancement (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 6. Count 6

In count 6, appellant was convicted of assault with a semiautomatic firearm and a subordinate term of four years was imposed. (§ 245, subd. (b).) This sentence was enhanced by three years four months for a firearm enhancement (§ 12022.5, subd. (a)). A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 7. Count 7

In count 7, appellant was convicted of assault with a semiautomatic firearm and a subordinate term of four years was imposed. (§ 245, subd. (b).) This sentence was enhanced by three years four months for a firearm enhancement (§ 12022.5, subd. (a)). A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 8. Count 8

In count 8, appellant was convicted of second degree burglary and the court imposed an upper term of six years. (§ 460, subd. (b).) This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)) and further enhanced by four years for a gang enhancement (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 9. Count 9

In count 9, appellant was convicted of first degree robbery and the court imposed a term of 48 years to life. (§ 213, subd. (a)(1)(A).)

### 10. Count 10

In count 10, appellant was convicted of first degree robbery and the court imposed a consecutive term of 48 years to life. (§ 213, subd. (a)(1)(A).)

### 11. Count 11

In count 11, appellant was convicted of first degree robbery and the court imposed a consecutive term of 48 years to life. (§ 213, subd. (a)(1)(A).)

### 12. Count 12

In count 12, appellant was convicted of assault with a semiautomatic firearm and an upper term of 18 years was imposed. (§ 245, subd. (b).) This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)). A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 13. Count 13

In count 13, appellant was convicted of assault with a semiautomatic firearm and an upper term of 18 years was imposed. (§ 245, subd. (b).) This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)). A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 14. Count 14

In count 14, appellant was convicted of assault with a semiautomatic firearm and an upper term of 18 years was imposed. (§ 245, subd. (b).) This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)). A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)). This sentence and enhancements were stayed.

### 15. Count 15

In count 15, appellant was convicted of assault with a semiautomatic firearm and a subordinate term of four years was imposed.  (§ 245, subd. (b).)  This sentence was enhanced by three years four months for a firearm enhancement (§ 12022.5, subd. (a)).  A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 16. Count 16

In count 16, appellant was convicted of first degree burglary and the court imposed a middle term of eight years.  (§ 460, subd. (a).)  This sentence was enhanced by 10 years for a firearm enhancement (§ 12022.5, subd. (a)) and further enhanced five years for a gang enhancement (§ 186.22, subd. (b)(1)).  This sentence and enhancements were stayed.

### 17. Count 17

In count 17, appellant was convicted of assault with a semiautomatic firearm and a subordinate term of four years was imposed.  (§ 245, subd. (b).)  This sentence was enhanced by three years four months for a firearm enhancement (§ 12022.5, subd. (a)).  A gang enhancement of five years was imposed (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 18. Count 18

In count 18, appellant was found guilty of grossly negligent discharge of a firearm and he received a subordinate term of one year four months.  (§ 246.3, subd. (a).)  This sentence was further enhanced by five years for a gang enhancement (§ 186.22, subd. (b)(1)), but that enhancement was stayed.

### 19. Count 19

In count 19, appellant was convicted of being a felon in possession of a firearm and he received an upper term of six years.  (§ 29800, subd. (a)(1).)  This sentence was stayed.

### 20. Count 20

In count 20, appellant was convicted of carrying a loaded firearm as an active criminal street gang member and he received an upper term of six years. (§ 25850, subd. (c)(3).) This sentence was stayed.

### 21. Count 21

In count 21, appellant was convicted for active participation in a criminal street gang and he received an upper term of six years. (§ 186.22, subd. (a).) This sentence was stayed.

## DISCUSSION

### I. Appellant is Entitled to the Retroactive Benefits of Assembly Bill 333; We Vacate His Gang Conviction (Count 21) and All Gang Enhancements; We Remand For Further Proceedings

Appellant's prior appeal in this matter occurred before Assembly Bill 333 became effective. As such, our prior opinion did not address this legislation and we directed the trial court to resentence appellant stemming from other unrelated issues. We otherwise affirmed appellant's judgment. (*People v. Mitchell, supra,* F075878).)

Following remand, and before appellant was resentenced, Assembly Bill 333 became effective on January 1, 2022. (*Tran, supra*, 13 Cal.5th at p. 1206.) Our Supreme Court holds that this legislation applies retroactively to any criminal matter that is not yet final on appeal. (*Id.* at pp. 1206–1207.)

When appellant was resentenced in 2022, the trial court was concerned that Assembly Bill 333 applied in this matter. The court asked the parties to brief this new legislation and its impact on appellant's case. After reviewing this issue with the parties, the court ruled that appellant's case had become final regarding the issue of appellant's guilt because appellant had exhausted his appeal rights. The court noted that appellant would be entitled to any ameliorative changes in law for resentencing purposes. However, the court felt it was bound by the scope of our remittitur. As such, the court

10.

concluded it did not have jurisdiction to set aside the gang-related conviction or enhancements.

Respondent concedes that, in general, Assembly Bill 333 is retroactive. However, respondent argues that appellant's judgment of conviction became final long before Assembly Bill 333 became effective. According to respondent, the trial court only had jurisdiction to resentence appellant within the confines of the remittitur when this matter was remanded, and no further litigation of guilt was permitted. In contrast, appellant contends he is entitled to the ameliorative benefits of Assembly Bill 333 because his criminal matter is not yet final. Appellant argues that his gang-related conviction and enhancements must be reversed following this change in law.

### A.      Appellant is Entitled to the Retroactive Benefits of Assembly Bill 333

In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), our high court held that, if an ameliorative statute is silent regarding its retroactivity, a presumption exists that the Legislature must have intended the new statute to apply "to every case to which it constitutionally could apply." (*Id.* at p. 745.) This means a qualifying new law applies to all cases that have not been reduced to a final judgment. (*Id.* at p. 746.)

For purposes of the *Estrada* rule, finality occurs "when the availability of an appeal and the time for filing a petition for certiorari with the United States Supreme Court have expired." (*People v. Buycks, supra*, 5 Cal.5th at p. 876, fn. 5.) In two fairly recent opinions, our Supreme Court made clear when a case becomes final for purposes of retroactivity under *Estrada*. The test for finality is "whether the criminal prosecution or proceeding as a whole is complete." (*Esquivel, supra,* 11 Cal.5th at p. 679.) The question is whether the "criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).)

11.

*Esquivel* and *McKenzie* involved unique circumstances. In *McKenzie*, the trial court suspended the imposition of sentence and placed the defendant on formal probation. (*McKenzie, supra*, 9 Cal.5th at p. 43.) In *Esquivel*, the defendant was sentenced, but the execution of sentence was suspended, and the defendant was placed on formal probation. (*Esquivel, supra*, 11 Cal.5th at p. 673.) In both instances, neither defendant initially filed an appeal. After several years, however, the defendants in each case appealed after they were found to have violated their respective terms of probation and their sentences had been ordered into effect. (*McKenzie, supra*, at p. 43; *Esquivel, supra*, at p. 673.) In both cases, our Supreme Court rejected the People's argument that the criminal judgments had already become final. Instead, because the defendants had been on probation, their criminal cases had not concluded and they were entitled to the benefits of intervening ameliorative legislation. (See *McKenzie, supra*, at pp. 48–51; *Esquivel, supra*, at pp. 679–680.)

Although the procedural histories of *McKenzie* and *Esquivel* are different from the situation presented here, the high court's reasoning in those opinions is instructive. A judgment and sentence are generally considered synonymous, and there is no judgment of conviction without a sentence. (*McKenzie, supra*, 9 Cal.5th at p. 46.) A presumption exists that our Legislature intends for ameliorative enactments to apply as broadly as is constitutionally permissible, and they apply to all nonfinal judgments. (*Esquivel, supra*, 11 Cal.5th at p. 677, citing *Estrada, supra*, 63 Cal.2d at p. 745.)

Respondent contends that part of appellant's judgment—the portion relating to appellant's guilt—became final long before appellant was resentenced in 2022. Respondent notes that this court issued its prior opinion in this matter in February 2021, and appellant filed a petition for review with the California Supreme Court on March 20, 2021. The high court denied review on May 26, 2021. Respondent further notes that there is no evidence appellant filed a petition for writ of certiorari in the United States Supreme Court. Accordingly, respondent calculates that appellant's judgment regarding

12.

the "legality of his convictions and his gang enhancement" became final on or about August 24, 2021. That is when the time passed for appellant to petition for a writ with the United States Supreme Court.

To support its position that appellant's guilt may no longer be adjudicated, respondent relies on language taken from *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*). In *Padilla*, a juvenile committed murder and conspiracy to commit murder. He was convicted and sentenced in adult court. (*Id.* at p. 159.) Padilla's juvenile murder conviction became final in 2001 when our Supreme Court denied his petition for review and he did not petition the United States Supreme Court for certiorari. (*Id.* at p. 170 (dis. opn. by Corrigan, J.).) More than a decade later, however, he successfully obtained a resentencing following a petition for a writ of habeas corpus after the law was amended regarding juvenile sentencing. (*Id.* at pp. 170–171 (dis. opn. by Corrigan, J.).) While the case was on appeal following his successful petition, California voters passed a *different* new law, the Public Safety and Rehabilitation Act of 2016 (as approved by voters, Gen. Elec. (Nov. 8, 2016) (Proposition 57)). (*Padilla, supra*, at p. 159.) Proposition 57 provided a juvenile could be tried in adult court only after a transfer hearing. Following Proposition 57, the trial court did not hold a transfer hearing and it again imposed the same sentence on Padilla. (*Padilla, supra*, at p. 159.)

The Supreme Court reviewed the matter and it confirmed that, under *Estrada*, Proposition 57 applied in criminal cases not yet final. (*Padilla, supra*, 13 Cal.5th at p. 160.) The high court held that Padilla's conviction was not yet final for this purpose because his sentence had been vacated after petitioning for habeas corpus relief. (*Id.* at p. 161.)

*Padilla* articulated the following, and we highlight in bold the language upon which respondent in this matter relies. *Padilla* stated: "[T]he Attorney General argues that vacatur of a defendant's sentence 'does not allow a resentencing court to consider new claims or affect any part of the judgment other than the sentence.' But the right and

13.

remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence.… He must receive a transfer hearing in a juvenile court, where the court will decide whether criminal adjudication is appropriate for the murder of his mother and conspiracy to kill his stepfather. **Whatever potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt**." (*Padilla, supra*, 13 Cal.5th at pp. 169–170, boldface added.)

Respondent focuses on this highlighted passage in *Padilla*. According to respondent, this language strongly suggests, if not explicitly states, that portions of a judgment may be final while other portions of a judgment may be nonfinal. As such, respondent asserts that appellant's guilt in this matter was final for purposes of *Estrada* at the time appellant's case was remanded to the trial court for resentencing.

We reject respondent's position. Setting aside the language from *Padilla*, our high court otherwise makes it very clear that, in criminal cases, the terms "'judgment'" and "''"sentence"''" are generally synonymous, and there is no judgment of conviction without a sentence. (*McKenzie, supra*, 9 Cal.5th at p. 46.) The cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to a final judgment. (*Ibid*.)

We do not read *Padilla* as creating bifurcated judgments in the manner respondent now advocates—especially for a criminal matter, such as this one, that never had its sentence reduced to a final judgment. Instead, *Padilla* was unique because that criminal matter was reopened through a habeas petition long after the judgment was final. The *Padilla* court was addressing a difficult question regarding the scope of the reopening. However, all of the justices accepted that *Estrada*'s retroactivity applied to cases that had never become final at all. (See *Padilla, supra*, 13 Cal.5th at p. 161 ["[a] case is final when 'the criminal proceeding as a whole' has ended"]; *id.* at p. 173 (dis. opn. by Corrigan, J.) ["we have consistently understood *Estrada*'s rule to apply to a case that had

14.

not been reduced to a final judgment"].) *Padilla* is distinguishable from the present matter and *Padilla* does not demonstrate that appellant should be precluded from receiving the benefits of Assembly Bill 333.

When this matter was before the trial court for resentencing in 2022, the court expressed concern that it lacked jurisdiction to address Assembly Bill 333. In general, when a reviewing court identifies an error relating solely to sentencing—which is what occurred in this matter when we remanded this case in 2021—the appellate court typically does not reverse the judgment of conviction or remand for a new trial, but, instead, simply remands for resentencing. (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1255.) The appellate court's order reflected in the remittitur ""is decisive of the character of the judgment to which the appellant is entitled."" [Citation.] On remand, the lower court may act only within these express jurisdictional limits." (*People v. Lewis* (2004) 33 Cal.4th 214, 228.) In other words, the remittitur "'defines the scope of the jurisdiction of the court to which the matter is returned[,]'" and the trial court "'is empowered to act only in accordance with the direction of the reviewing court ....'" (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.)

The scope of our previous remittitur did not encompass Assembly Bill 333. Instead, we vacated appellant's sentence and remanded for a full resentencing to address other issues. (*People v. Mitchell, supra*, F075878).) As such, we do not fault the trial court for expressing concern that it lacked jurisdiction to go beyond the scope of our remittitur. However, this criminal prosecution had not concluded before the ameliorative legislation took effect. Appellant was still waiting for his 2022 resentencing to occur when this new law became operative on January 1, 2022. Accordingly, appellant's criminal judgment never became final, and we must presume the Legislature intended for this ameliorative enactment to apply as broadly as is constitutionally permissible. (See *Esquivel, supra*, 11 Cal.5th at p. 677, citing *Estrada, supra*, 63 Cal.2d at p. 745.) Consequently, we hold that appellant is entitled to the benefits of Assembly Bill 333, and

15.

we reject respondent's assertion that the issue of appellant's guilt is final even though the validity of appellant's sentence is still being adjudicated.

Our holding today is consistent with this court's opinion in *People v. Lewis* (2022) 86 Cal.App.5th 34 (*Lewis*).  In *Lewis*, this court issued an opinion in 2015 resolving issues the defendant had raised following his convictions for numerous felonies.  The matter was remanded for resentencing.  (*Id.* at pp. 36–37.)  The defendant again appealed and, in 2020, this court again remanded the defendant's matter for the trial court to exercise its sentencing discretion under new legislation that had been recently enacted.  (*Id.* at p. 37.)  In March 2021, the trial court resentenced the defendant, who again appealed.  (*Id.* at pp. 37–39.)  In the interim, Assembly Bill 333 became effective on January 1, 2022.  During the third appeal, the Attorney General conceded that Assembly Bill 333 required reversal of the defendant's gang counts and gang-related enhancements.  (*Lewis, supra*, at pp. 36, 39.)  This court accepted the Attorney General's concession and, in December 2022, the matter was again remanded for a possible retrial of the gang-related charges and enhancements.  (*Id.* at p. 42.)

Contrary to the present matter, the Attorney General in *Lewis* did not dispute that the defendant was entitled to the retroactive benefit of Assembly Bill 333.  In *Lewis*, this court extended the benefits of Assembly Bill 333 to the defendant, whose crimes had occurred prior to 2015, and who had his criminal matter on appeal before this court two times before Assembly Bill 333 became effective.  The disposition in this matter is consistent with the disposition in *Lewis*.

Finally, we note that a divided panel of the Fourth Appellate District, Division Two, recently analyzed a similar issue to the one presented here.  In *People v. Lopez* (2023) 93 Cal.App.5th 1110 (*Lopez*), review granted November 15, 2023, S281488, the defendant had his appeal heard before Assembly Bill 333 became effective.  In 2020, the appellate court modified the defendant's judgment and conditionally reversed it.  The trial court was directed to consider whether to strike certain enhancements.  (*Lopez,*

16.

*supra*, at p. 1115.)  Following remand to the trial court, Assembly Bill 333 became effective, but the trial court concluded that the defendant was not entitled to its benefits because his conviction had previously become final, and the court resentenced the defendant in 2022.  (*Lopez, supra*, at p. 1115.)  The defendant again appealed, asserting he was entitled to the benefits of the new legislation, and one of his gang enhancements should be reversed for insufficient evidence.  (*Id.* at p. 1113.)

The majority in *Lopez* concluded that the defendant was entitled to the ameliorative benefits of Assembly Bill 333 when his matter was remanded to the trial court.  (*Lopez, supra*, 93 Cal.App.5th at p. 1119, review granted.)  However, although the defendant was entitled to those benefits, the majority held that those benefits were "irrelevant" because the matter had been remanded solely for resentencing, and the trial court only had jurisdiction to act in accordance with the directions from the reviewing court.  (*Id*. at pp. 1114, 1119.)  The majority in *Lopez* was swayed by the passage from *Padilla*, which we previously highlighted in this opinion.[7]  The *Lopez* majority acknowledged that this language from the high court was dicta, but the *Lopez* majority felt it nevertheless held persuasive value.  (*Lopez, supra*, at pp. 1118–1119.)  Accordingly, the majority held that, even though Assembly Bill 333 applied to the defendant on remand, the trial court had no jurisdiction to relitigate the gang enhancements.  (*Lopez, supra*, at p. 1120.)  The majority in *Lopez* affirmed the judgment without affording the defendant the benefit of Assembly Bill 333.  (*Lopez, supra*, at pp. 1120–1121.)  According to the majority, "there was nothing the trial court could or should have done" about Assembly Bill 333.  (*Lopez, supra*, at p. 1120.)

---

[7]  To assist the reader, we again note that the high court in *Padilla* stated that, in extending retroactive benefits from Proposition 57 to Padilla, he was not allowed to raise claims unrelated to his sentence and whatever potential a juvenile transfer hearing "may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla, supra*, 13 Cal.5th at pp. 169–170, boldface added.)

17.

In contrast to the majority, the dissent in *Lopez* asserted that the criminal matter had not been reduced to a final judgment, and the majority's approach was in conflict with precedent from the California Supreme Court. (*Lopez, supra*, 93 Cal.App.5th at p. 1125, review granted (dis. opn. of Raphael, J.).) The dissent urged the majority to extend the benefits of Assembly Bill 333 to the defendant. (*Lopez, supra*, at p. 1123 (dis. opn. of Raphael, J.).)

On November 15, 2023, the California Supreme Court granted a petition to review *Lopez*. The high court will resolve the following issue: Is the defendant entitled to retroactive application of Assembly Bill 333 "where he appeals for a second time after his judgment was conditionally reversed and the Court of Appeal issued a limited remand to the trial court to address sentencing issues?"

We conclude that, like appellant in this matter, the defendant in *Lopez* is entitled to the retroactive application of Assembly Bill 333. We disagree with the majority's approach in *Lopez*. It affirmed the defendant's judgment without providing the defendant any ameliorative benefits of Assembly Bill 333, even though the majority agreed that those benefits retroactively applied to the defendant. (See *Lopez, supra*, 93 Cal.App.5th at pp. 1120–1121, review granted.) Although the trial court in *Lopez* (like the lower court in this matter) may have been bound by the scope of the prior remittitur, the retroactive benefits should have been extended to the defendant on appeal because his criminal proceeding had not yet been reduced to a final judgment.

We turn to the validity of this record.

**B.     This Record No Longer Establishes the Required Predicate Offenses Necessary to Sustain the Gang Charge and Enhancements**[*]

Since we issued our prior opinion in February 2021, Assembly Bill 333 added new elements necessary to establish a criminal street gang. This included a heightened

---

[*]     See footnote, *ante*, page 1.

18.

requirement for the type of prior crimes that must be introduced to establish a "'pattern of criminal gang activity.'" (§ 186.22, subd. (e)(1), (2); see *Tran, supra*, 13 Cal.5th at p. 1207.) These prior crimes are known as "predicate offenses." (*People v. Navarro* (2021) 12 Cal.5th 285, 311.)

Appellant argues that, following Assembly Bill 333, this record is no longer sufficient to establish the predicate offenses that were introduced in his trial. Appellant also raises a claim of instructional error, asserting the jury was not given the elements now required under Assembly Bill 333. According to appellant, the jury convicted him of the gang crime, and found true the gang enhancements, based on a now legally invalid theory.

At trial in this matter, the prosecution introduced into evidence six predicate offenses. In its initial brief, respondent conceded that, if Assembly Bill 333 retroactively applies in this matter, then the evidence is insufficient under the amended law to support a majority of those predicate offenses. However, respondent initially argued that two of the predicate offenses were still valid. Thus, respondent took the position that any error in failing to instruct the jury regarding the additional elements imposed by Assembly Bill 333 was harmless beyond a reasonable doubt. According to respondent in its initial brief, remand was unnecessary because—based on the two remaining predicate offenses—the jury would have nevertheless found that the East Side Crips was a criminal street gang even under Assembly Bill 333's more stringent requirements.

However, Assembly Bill 333 is not the only significant change that has occurred regarding gang-related charges and enhancements since we issued our prior opinion in this matter. In 2021, and before Assembly Bill 333 went into effect, the California Supreme Court clarified that predicate offenses can no longer be proven through an expert witness who simply relays hearsay information derived from other sources. Instead, the facts underlying a predicate offense "must be proved by independently admissible evidence." (*Valencia, supra*, 11 Cal.5th at p. 839.) The *Valencia* court noted

19.

that contents of police reports may contain testimonial hearsay. (*Id.* at p. 840.) If the improperly admitted hearsay is testimonial within the meaning of the confrontation clause (see, e.g., *Crawford v. Washington* (2004) 541 U.S. 36, 68–69), the error must be reviewed for prejudice under the federal Constitution (*Valencia, supra*, at p. 840, citing *Chapman v. California* (1967) 386 U.S. 18, 24).

Our high court published *Valencia* in July 2021, almost five months after we issued our prior opinion. As such, just like Assembly Bill 333, neither the parties nor this court had an opportunity to discuss *Valencia* or apply it to this matter.

In general, a new rule for the conduct of criminal prosecutions is applied retroactively to all cases pending on appeal or not yet final, even if the new rule presents a "'clear break' with the past." (*Griffith v. Kentucky* (1987) 479 U.S. 314, 328; see *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 507.) A criminal conviction is typically tested on appeal under the current law, and not the law prevailing at the time of trial. (*People v. Welch* (1999) 20 Cal.4th 701, 732, fn. 4.)

The new rules announced in *Valencia* must be applied in this matter for the same reason Assembly Bill 333 applies; this criminal matter has never been reduced to a final judgment and it is currently pending on direct appeal.

After we reviewed the parties' briefs, we directed respondent to provide supplemental briefing to address whether the predicate offenses introduced at appellant's trial satisfy the requirements of *Valencia*. Respondent now concedes that, if Assembly Bill 333 retroactively applies in this matter, it is appropriate to reverse the gang enhancements. We agree.

The two predicate offenses, which respondent relies upon, were established through the testimony of the prosecution's gang expert. In both instances, the expert simply relayed information to the jury obtained from other sources.[8] In other words, the

---

[8]    The first predicate offense upon which respondent focuses involved DeShawn Roberts, an alleged gang member who was convicted of driving another gang member to shoot at a gang

20.

two predicate offenses in this matter that might have otherwise satisfied the requirements of Assembly Bill 333 were nevertheless introduced into evidence solely through hearsay testimony. Accordingly, the requirements in *Valencia* are lacking.

With the changes first brought by *Valencia* and then by Assembly Bill 333, this record no longer contains independently admissible evidence that establishes at least two valid predicate offenses. Consequently, a "'pattern of criminal gang activity'" has not been proven under the current standards. (See § 186.22, subds. (e)(1) & (f).) Thus, we agree with respondent that the gang enhancements must be reversed and this matter remanded for a potential retrial. Likewise, the gang conviction in count 21 must be reversed.[9] Because the law was amended, the People shall have an opportunity to retry the gang charge and the gang enhancement allegations. (See *People v. Oliva, supra*, 89 Cal.App.5th at p. 89; *People v. Sek, supra*, 74 Cal.App.5th at pp. 669–670.)

Because respondent concedes reversal is required in light of *Valencia*, we need not address the parties' other disputed points from their initial briefing regarding whether or not the two remaining disputed predicate offenses satisfy the requirements of Assembly Bill 333. We likewise need not address appellant's claim of instructional error involving Assembly Bill 333. We vacate appellant's sentence and remand for further proceedings.

---

rival. The second predicate offense involved Kai Williams, an alleged gang member who was convicted of shooting at officers while they were attempting to stop a stolen vehicle. Neither of these predicate offenses were established with independently admissible evidence.

[9] Respondent argues that appellant only requested reversal of the gang enhancements and not the substantive gang conviction. In his reply brief, however, appellant clarifies that he also seeks reversal of the gang conviction. In any event, the gang conviction must be reversed due to the change in law. (See § 186.22, subds. (a) & (e)(1).) We note that, in counts 10 and 11, the trial court imposed consecutive sentences. However, the indeterminate abstract of judgment erroneously shows that concurrent sentences were imposed in these counts. Following resentencing, all abstracts of judgment should accurately reflect the oral pronouncement of judgment.

21.

## DISPOSITION

The gang conviction in count 21 (§ 186.22, subd. (a)) is vacated. The jury's true findings regarding all gang enhancements (§ 186.22, subd. (b)(1)) are vacated. Appellant's sentence is vacated and this matter is remanded for further proceedings. The prosecution shall have the opportunity to retry the gang charge in count 21 (§ 186.22, subd. (a)) and all gang enhancements (§ 186.22, subd. (b)(1)). Absent a waiver of time, if the People do not bring appellant to retrial within the time limits of section 1382, subdivision (a)(2), the trial court shall proceed to resentence appellant. Following resentencing, the trial court shall cause new abstracts of judgment to be forwarded to the appropriate authorities. In all other respects, appellant's judgment is affirmed.


MEEHAN, J.

I CONCUR:


DeSANTOS, J.

POOCHIGIAN, Acting P. J., Concurring.

I concur in the majority opinion because the Supreme Court has clearly determined that, for *Estrada*[1] purposes, "there is no 'judgment of conviction' without a sentence." (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).) I write separately to reflect on the import of this holding.

*McKenzie* observed that "judgment" and "sentence" are generally synonymous. (*McKenzie*, *supra*, 9 Cal.5th at p. 46.) Before *McKenzie*, however, courts had held that "[i]t would be more accurate to state that the judgment in a criminal action is a record of the adjudication of guilt *and* the determination of the penalty." (*People v. Pineda* (1967) 253 Cal.App.2d 443, 451, italics added.) In other words, the sentence is not the judgment, but rather one *part* of the judgment. The conviction is the other part.

A corollary to this principle was that the finality of the guilt aspect of the judgment (i.e., a conviction) was not affected merely because the penalty aspect of the judgment (i.e., the sentence) was reopened. Specifically, that "an appellate court has power and authority to open the penalty aspect of the judgment without affecting the finality of the adjudication of guilt." (*People v. Pineda*, *supra*, 253 Cal.App.2d at p. 451.)

For example, in *People v. Vaughn* (1973) 9 Cal.3d 321, the defendant's "judgment as to penalty" had been previously reversed while his "judgment as to guilt" had been affirmed. (*Id.* at p. 323, superseded by statute on other grounds as noted in *People v. Chadd* (1981) 28 Cal.3d 739, 749.) The penalty issue was retried, and the defendant again appealed to the Supreme Court. In a second appeal, the defendant not only challenged the penalty imposed on retrial, but also "raise[d] several contentions with respect to the initial judgment of guilt." (*Vaughn*, at p. 324.) Even though appellate issues regarding the sentence remained, the Supreme Court observed that its "prior

---

[1] *In re Estrada* (1965) 63 Cal.2d 740.

affirmance of the judgment of guilt constitutes a final judgment as to guilt, at least with respect to questions of state law." (*Id.* at p. 26, fn. 3.)

Similarly, in *People v. Kemp* (1974) 10 Cal.3d 611, the Supreme Court held a judgment of conviction was "final" even though a writ of habeas corpus had vacated the judgment as to penalty. (*Id.* at p. 614.)

Cases like *Pineda*, *Vaughn*, and *Kemp* set limits on issues surrounding finality and retroactivity.[2] In the present era of recurring sentence-altering legislation, removal of those constraints means that changes in *substantive* criminal law (not just ameliorative sentencing legislation) can reverberate backwards to crimes committed many years before the change in law.[3]

---

[2] The Supreme Court may revisit issues of finality in its review of *People v. Lopez* (2023) 93 Cal.App.5th 1110, review granted, November 15, 2023, S281488. The Court of Appeal's central point in *Lopez* regarding a trial court's jurisdiction on remand is correct. " 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void." ' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.) A remittitur ordering resentencing only vests in the trial court jurisdiction to resentence the defendant. It has no jurisdiction to change the judgment in other respects, such as vacating a conviction. The *Lopez* court was correct to conclude that its lower court was powerless to vacate the defendants' convictions under Assembly Bill No. 333 (2021–2022 Reg. Sess.)

However, while the trial court, bound by the terms of the prior remittitur, lacked authority to vacate the convictions, the Court of Appeal was not so restricted and could have itself reversed the convictions in the *Lopez* decision.

[3] This can lead to peculiar outcomes. For example, consider two defendants who commit identical crimes at the same time. Imagine their convictions are affirmed, but a sentencing error in one of the cases requires reversal, while the absence of sentencing error in the other case results in affirmance. Under *McKenzie*, the finality of the entire judgment in the former case is significantly delayed compared to the latter case. If an intervening legislative change was made to the underlying substantive crime itself (i.e., not a sentencing change), one defendant may benefit from it while the other does not – even though they committed *the same crime at the same time*.

2.

Not once has a court reversed any of the 21 felony convictions defendant suffered in 2017.  Yet, five years later those convictions still are not final.  Nonetheless, given the present state of the law, I must concur.


POOCHIGIAN, Acting P. J.